PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. CRISPÍN NEVARES VIRELLA, Defendant and Appellant.

No. 6727. Argued February 23, 1938.—Decided March 11, 1938.

Celestino Iriarte, F. Fernández Cuyar and Héctor González Blanes for appellant. R. A. Gómez, Prosecuting Attorney, and Luis Janer, Assistant Prosecuting Attorney, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

A complaint was filed against Crispín Nevares Virella in the Municipal Court of Toa Alta for carrying prohibited weapons, in that on December 20, 1936, and on public highway number 2, kilometer 24, he was, unlawfully, wilfully, and maliciously, carrying a revolver upon his person.

He entered a plea of not guilty and was convicted. He appealed to the District Court of Bayamón. A new trial was had, and the court sentenced him to two months in jail. He asked for reconsideration of the judgment. By an opinion and order entered on May 28, 1937, his motion was denied. He appealed to this Court, and in his brief assigns two errors, the first committed, as he contends, by the district court in improperly applying the law to the facts of the case, and the second in imposing upon him an excessive punishment under the circumstances.

The witnesses for The People were Enrique de Orbeta, Chief of the Insular Police, and José A. López, District Chief of the Police.

The former said:

". . . I was riding in car number 11 of the Insular Government, on a tour of inspection, going toward Toa Alta, and on reaching kilometer 23.8, came on some cattle going in the same direction as the car. We went along behind the cattle for some meters when I looked up and saw a man on horseback, dressed in khaki; I noticed that he was carrying a revolver on his left side, hanging from his trousers. . . . On seeing this armed horseman, I stopped the car, got out and called to him, but he began to get off the road. I yelled:

'Stop, I want to talk to you.' He made the horse go faster, took a wire fence and knocked it down, and went into a canefield. I stood there yelling two or three times, but he disappeared. Then I went up to the cattle, to those who were driving the cattle and asked them who this man was, and no one was able to tell me. At last, after many questions, one of them said: 'He is called Crispín.' With that, I went on to Toa Alta and there called on the Chief of the Police, Corporal López; I told him what had happened and asked him to come with me to see whether we could find this man. On coming back, about 100 meters in this direction after passing the bridge, I saw the horseman in the middle of the highway. I told the corporal: 'I recognize him.' When we were about to come up to him, he, on seeing us, got on his horse again, and started running for the left side of the road, he rushed; then Corporal López called out to him: 'Crispín, I recognize you.' When he came up, I asked him where the weapon was and he said that he had left it at the farm. I asked him if he had a license to carry weapons, and he answered me quite disrespectfully: 'You ought to busy yourself with those disgraceful chauffeurs that ride on the highway, I carry the revolver to protect myself from them.' I said to the corporal: 'Arrest this man, make the necessary investigations, and file charges against him.' "

The second witness stated:

"On December 20 of last year, about 9:45 in the morning, the Colonel of the Police, Enrique de Orbeta, accompanied by his chauffeur, appeared in the district office. He asked me whether I knew one Crispín who was working for Nevares; I told him I did, and he then advised me that he had surprised this man on the highway with a revolver in his belt, and we went to the place on the highway, number 2, kilometer 24, and on reaching the place, a little this way, we saw that Mr. Crispín Nevares was getting on a horse; on seeing the car, he sought to go back again, he left the road in the direction of a fenced pasture; I called to him and he came up and was identified by the Colonel and the policeman as the same person who on the previous occasion was carrying the revolver; I required him to turn it over, and when he did so, I searched him; he had no revolver on him."

The defendant himself and José Nevares testified for the defense.

The defendant stated that he was the overseer of a farm of 600 *cuerdas* belonging to José Nevares and that he was taking the cattle from the stable to a lower part of the farm where there was pasture; that the farm was situated on both sides of the highway, and that he was not carrying a weapon. To the following question of the prosecuting attorney: "He called you and you did not answer the first time?" he answered:

' "At that moment I stopped lower down on the road, then when the car came down, he got out and said: 'Listen, stop there.' I stopped for the first time. 'Come here.' Then I stood still and he turned and said: 'Come here or I am going to shoot.' Then I said: 'I don't have to go because I have to go to the farm. I am an employee there, overseer.' I heard the lady say: 'You big bruiser, why don't you shoot him? I thought it was so and left there running."

José Nevares testified that the defendant was the overseer on his farm which lies on both sides of the highway; that he did not see what happened, and that to take the cattle to graze from the stable, it is necessary to cross the highway and to walk down it a little piece, about a quarter of a kilometer.

As may be seen, there is an absolute conflict in the evidence. The Chief of Police is certain that the defendant was carrying a revolver upon his person while on the road, and the defendant testifies that he was not carrying any weapon.

In defendant's brief, the position is abandoned that there was no carrying of a weapon upon the part of the defendant. The brief goes upon the theory that since the defendant is an overseer who is wont to drive cattle from one part of the farm to another, he was entitled to go armed, even though he had to cross the highway. He cites the cases of *People* v. *Bosch,* 43 P.R.R. 711 and *People* v. *Rodríguez,* 43 P.R.R. 718.

The former is distinguishable from this case. Bosch was a watchman at a sugar mill, of which the lands extended on both sides of the highway. He was found armed within the

property, and if, while armed, he went out on the highway, it was in pursuit of two men who had been cutting grass on his employer's property.

There is less difference between this case and that of Rodríguez, *supra,* because in the former case it was admitted that the defendant travelled on the highway while armed for about a quarter of a mile while on his way from the place of his employment to his own house; but it was emphasized in that case that he had been especially "enjoined to keep a careful watch because of threatened stealing of horses." 43 P.R.R. 718, 719.

In the case now before us for consideration and decision, the defendant overseer had no need to go out on the highway while armed. As was said in the case of *People* v. *Echevarría,* 46 P.R.R. 625, 626, in an unanimous opinion of this Court delivered by Mr. Justice Aldrey:

"The appellant should not have gone out of the premises with his revolver towards the property of another person to deliver a horse and fetch his own, thus having to travel on the highway; he was performing a duty that pertained to his employment, but such duty did not require of him that he be armed. The distance traveled along the public road is unimportant, for it matters not whether he traveled a kilometer or less than that distance. Under the circumstances of the present case, he was not entitled to go upon the highway with a revolver."

As the district judge stated in his opinion denying reconsideration of the judgment:

"It should not be forgotten that there is nothing in the statute directly authorizing an agent or watchman to carry weapons on his employer's property. *People* v. *Cardona,* 50 P.R.R. 198. Since an overseer or watchman necessarily has the use and occupation of the property in his care, the decisions have recognized that he, in the course of his employment, is on his own property. *People* v. *Bosch,* supra. In other words, an overseer or watchman symbolically acts as the owner of the property insofar as his care thereof is concerned. But this does not mean that an overseer or watchman, merely by being such, may carry weapons outside of the course of his employ-

ment or even within the performance of his duties when there is no necessity for his being armed.''

Only lately this Court held in the case of *People* v. *García*, 52 P.R.R. 285, as stated in the syllabus, that:

''Assuming that the defendant was authorized to carry a weapon within the food-supply warehouses of the F.E.R.A. and that he was a watchman thereof, his action in going unto the highroad from a warehouse carrying a weapon, in the absence of a showing that he was in pursuit of someone committing an unlawful act in the warehouse, or for some reason of that sort, is a violation of the law, which is not justified by the fact that he was going from one warehouse to another in official business when that business has nothing to do with the guard duty charged to him nor explains the necessity in which he found himself to go unto the highroad carrying a weapon.''

The trial court did not, therefore, err in applying the law to the facts of the case.

Nor was the second error assigned, committed. In view of all the circumstances, the minimum penalty could have been imposed. If it had been, we would have had nothing to say. The court, however, believed that the sentence should be two months. The maximum fixed by the statute is six months. Furthermore, we are not justified in saying anything on this point since the trial court was in a better position than we to appreciate to their fullest extent all the surrounding circumstances, and did not exceed its powers. The trial court selected less than one-half of the maximum to punish the offense, and in view of the great number of bloody crimes that are being committed in Puerto Rico and of the fact that the carrying of weapons for offense and defense complicates and aggravates the consequences of any personal encounter and on occasion provokes it, courts should be rigid in the punishment of persons violating the statute prohibiting such carrying.

The appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.